**Richard H. Rizk, OSB 901105**
Email: rich@rizklaw.com
**Alexander W. Pletch, OSB 174384**
Email: alex@rizklaw.com
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **BRIGITTE THOMAS**, in her individual capacity and as Administrator of the **ESTATE OF BRYAN PENNER**, | ) ) ) ) | |
| Plaintiff, | ) ) | NO.: 6:19-cv-01781-AA |
| v. | ) ) | **SECOND AMENDED COMPLAINT** |
| **DESCHUTES COUNTY**, by and through **DESCHUTES COUNTY SHERIFF'S OFFICE**, a department of Deschutes County, **JOSHUA WHITCOMB**, in his individual and official capacity as supervisor at Deschutes County Adult Jail, **BLAIR BARKHURST**, in his individual and official capacity as shift sergeant at Deschutes County Adult Jail, **KAITLYN KITAJI, MSW, LCSW**, in her individual and official capacity as mental health treatment provider at Deschutes County Adult Jail, and **UNKNOWN DEPUTIES**, in their individual and official capacity as deputies at Deschutes County Adult Jail, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

## **COMPLAINT**

Plaintiff Brigitte Thomas (hereafter "Plaintiff"), in her individual capacity and as

Personal Representative for the Estate of her son Bryan Penner (hereafter, individually "Mr.

Penner" and administratively "The Estate"), by and through her undersigned attorneys of record,

1 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

for her complaint against Deschutes County (hereafter "the County"), by and through Deschutes

County Sheriff's Office (hereafter "DCSO"), Joshua Whitcomb (hereafter "Defendant

Whitcomb"), Blair Barkhurst (hereafter "Defendant Barkhurst"), Kaitlyn Kitaji, MSW, LCSW

(hereafter "Defendant Kitaji"), and as-yet unknown responsible deputies of aforesaid DCSO

(hereafter "the Defendant Deputies") (collectively, hereafter, "the Defendants") alleges as

follows:

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983, and analogous state law

claims brought under color of Oregon law pursuant to 28 U.S.C. § 1367, as secured respectively

by the Eighth and Fourteenth Amendments to the United States Constitution, and applicable

State of Oregon statutory and common law.

2.      Mr. Penner died in the custody of the aforesaid officials and corporate entities

while awaiting trial on charges of restraining-order violations. The circumstances surrounding

his death to this day remain a mystery to his mother *e.g.* Plaintiff, the undersigned attorneys, and

based on knowledge and belief, all others.

3.      Mr. Penner's death occurred while under the custodial supervision and

concomitant responsibility of the aforesaid Defendants, and in violation of Mr. Penner's rights

under federal, state, and common law.

## JURISDICTION AND VENUE

4.      Plaintiff realleges Paragraphs 1-3 and incorporates each by reference as if set

forth fully herein.

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, respectively.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events

giving rise to the claims herein alleged occurred within the confines of said judicial district.

///

2 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

## **PARTIES**

7.      Plaintiff realleges Paragraphs 1-6 and incorporates each by reference as if set forth fully herein.

8.      At all material times herein, Plaintiff was an individual living in Oregon. Plaintiff is duly appointed as Personal Representative of the Estate.

9.      At all material times herein until his untimely demise, Mr. Penner was an individual living in Oregon.

10.      At all material times herein, the County was a political subdivision of the State of Oregon, acting under color of law created and existent in the State of Oregon, County of Deschutes.

11.      At all material times herein, DCSO was an "arm" of the County acting under color of law created and existent in the State of Oregon, County of Deschutes.

12.      At all material times herein, Defendant Whitcomb, individually and in his official capacity, was a DCSO supervisor and domiciled in or around the State of Oregon, County of Deschutes.

13.      At all material times herein, Defendant Barkhurst, individually and in his official capacity, was a DCSO shift sergeant and domiciled in or around the State of Oregon, County of Deschutes.

14.      At all material times herein, Defendant Kitaji, individually and in her official capacity, was a mental health therapist working in the course and scope of her employment with DCSO, and domiciled in or around the State of Oregon, County of Deschutes.

15.      At all material times herein, the Defendant Deputies, individually and in their official capacity, were jail deputies employed by DCSO and domiciled in or around the State of Oregon, County of Deschutes.

16.      At all material times herein, all individual defendants acted under color of law.

3 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

17.    At all material times herein, all individuals acted within the course and scope of employment, and in furtherance thereto.

18.    All individual defendants are sued in their individual capacities as relates to claims under color of law pursuant to 42 U.S.C. § 1983. All individual defendants are sued in their official capacities as relates to claims under course and scope of their employment pursuant to laws of the State of Oregon.

## FACTUAL ALLEGATIONS

19.    Plaintiff realleges Paragraphs 1-18 and incorporates each by reference as if set forth fully herein.

20.    At all material times herein, it was widely known throughout the correctional field and extensively documented that suicides in jail occur at a rate several times greater than in the general public. For instance, a recent study from the U.S. Department of Justice Bureau of Justice Statistics found that suicide has been the leading cause of death in jails every year since 2000. U.S. Dep't of Justice, *Mortality in Local Jails and State Prisons, 2000-2013 – Statistical Tables*, BUREAU OF JUSTICE STATISTICS, August 2015 (available at: http://www.lbjs.gov/-index.cfm?ty =pbdetail&iid=5341). A 2010 study published by the U.S. Department of Justice National Institute of Corrections reported that 47% of jail suicides were detainees who had a history of substance abuse, and 70% of jail suicides occurred within four months of confinement. Lindsey Hayes, *National Study of Jail Suicide 20 Years Later*, NATIONAL CENTER ON INSTITUTIONS AND ALTERNATIVES, April 2010, at xi (available at: http://static.nicic.gov/Library/-024308.pdf). A 2003 study published by the Human Rights Watch reports, "[y]oung men, persons with mental illness, alcohol and drug addicts, and people who are in custody, are amongst the most at-risk groups for suicide." Human Rights Watch, *Ill-Equipped: U.S. Prisons and Offenders with Mental Illness*, Oct. 2003, at 186 (available at: https://www.hrw.org/report/-2003/10/21/ill-equipped/us-prisons-and-offenders-mental-illness).

4 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

21.     On or about February 22, 2018, police arrested Mr. Penner pursuant to Deschutes County Case No. 17PO11527. DCSO accepted custody of Mr. Penner while he awaited trial.

<em>Suicide Risk</em>

22.     Mr. Penner had a history of suicidal ideation and attempts, including but not limited to an attempt on his life on or about November 24, 2017, less than 6 months before his pretrial detainment.

23.     At all material times, the Defendants knew of aforesaid suicidal ideation and attempts. To wit, Mr. Penner's attempt on his life on or about November 24, 2017, was recorded in his medical history and on file with DCSO and its employees up to the time of his death.

24.     Furthermore, on or about February 25, 2018, Defendant Kitaji documented, "*The deputy reported that he received a call from the* [sic] *Mr. Penners mother reporting that Mr. Penner attempted suicide the day after Thanksgiving. This information was not disclosed by Mr. Penner on his intake screening. . . . He reports that he did attempt suicide after Thanksgiving and was in the ICU for 4 days. He reports no follow through with behavioral health. He shared that he does struggle with suicidal thoughts*."

25.     In the two weeks between this notation and Mr. Penner's death, neither Defendant Kitaji nor any other employee of DCSO, the County, or any of the individual defendants established any suicide-prevention protocols for Mr. Penner during his stay in DCSO custody.

26.     At all material times, the Defendants knew and recklessly disregarded that Mr. Penner exhibited other classic red-flags of suicide risk well-known in the correctional community, as well as signs specific to Mr. Penner's behavior. Evidence of such knowledge and disregard includes, subject to amendment pending discovery:

    a)   He was a young male;

    b)   He had a documented history of substance use and abuse;

5 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

   c)  He exhibited outward signs of depression according to block cellmates such as Guadalupe Soto-Moreno and Nikolaus Hinton, including frequent crying and overeating; and

   d)  He was in custody.

   e)  On February 23, 2018, video footage from Mr. Penner's jailcell showed Mr. Penner actually attempting to commit suicide. To wit, as subsequently reported by one Chad Owens:

      i.  *"[A]t approximately 1511 hours, I observed Penner attempt to hang himself with his towel. Penner pushed his towel through a hole in the top bunk and then tied a knot at the end of the towel preventing the towel from being able to slide back through the hole. Penner then wrapped the towel around his neck and tried to lay face down causing himself to choke. Penner's attempt was unsuccessful. At approximately 1513 hours, he takes a break and it appears he is trying to avoid detection by the jail deputies."*

     ii.  *"At approximately 1517 hours, Penner tries to hang himself again by wrapping the towel around his neck and lying face down towards his mattress. At approximately 1518 hours, Penner unties the knot in the towel and takes it down."*

    iii.  *"At about 1524 hours, Penner tears the towel into half as it appears he is trying to figure out a different way to hang himself. Soon after, it appears Penner hears someone outside of his cell and hides the two pieces of towel behind his back. Penner then tears one of the pieces of towel in half making a total of 3 pieces. Penner then ties two of the pieces together at the ends making one long piece. He then makes a noose at the end and*

6 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

> *continues to put it around his neck. It appears he is checking the noose for*
> *function and proper fit.*"

   iv.  "*At about 1530 hours, Penner flips over a piece of paper and starts*
        *writing what could be a suicide note. At 1533 hours, Penner finishes what*
        *he is writing and flips the paper back over. He eventually makes his way*
        *back to his bunk and stuffs the towel/noose into his cubby below his bunk.*"

f)  On March 1, 2018, investigating officers learned from a close acquaintance of
    Mr. Penner that Mr. Penner had recently attempted suicide related to a breakup
    with Sara Gomez, and that in the acquaintance's opinion, Mr. Penner "couldn't
    take it" he and Ms. Gomez were breaking up.

g)  On March 6, 2018 at 1:53 PM, Mr. Penner discussed a suicide note he had left in
    his apartment on a recorded phone call in DCSO custody.

h)  On March 6, 2018 at 8:45 PM, Mr. Penner described a noose left in his apartment
    as being from his November 2017 suicide attempt.

27.    At all material times, the Defendants knew and acted with deliberate indifference
toward the obvious and substantial risk Mr. Penner would, and actually did, attempt suicide
while in Defendants' custody, as evinced above.

<i><u>Homicide Risk</u></i>

28.    At all material times, the Defendants knew and acted with deliberate indifference
to the fact that Mr. Penner's long-term girlfriend had gone missing in February 2018, causing
Mr. Penner severe emotional stress.

29.    At all material times, the Defendants knew and acted with deliberate indifference
to the fact that various news sources, available to inmates within DCSO custody, had alleged Mr.

7 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

Penner as a suspect in his long-term girlfriend's disappearance, placing Mr. Penner at risk of attack in DCSO custody.

30.    At all material times, the Defendants knew and acted with deliberate indifference toward the fact that Mr. Penner was receiving death threats in DCSO custody related to the disappearance of his long-term girlfriend. Evidence of such knowledge and disregard includes, subject to amendment pending discovery:

    a)    On March 4, 2018, DCSO employees or agents recorded and listened in on a phone call between Mr. Penner and Deb Sartain, in which Mr. Penner noted he had received various death threats from other inmates and was "worried."

    b)    On March 6, 2018, DCSO employees or agents recorded and listened in on a phone call between Mr. Penner and his mother, in which Mr. Penner described receiving death threats from another inmate.

    c)    On March 6, 2018, DCSO employees or agents recorded and listened in on a phone call between Mr. Penner and his father, in which Mr. Penner discussed his attempts to change to a different jail cell due to threats against him.

31.    During the several weeks between Mr. Penner's incarceration and his death, none of the Defendants, nor the County or DCSO's employees, made any efforts to investigate said threats or isolate Mr. Penner from those making death threats against him.

*The Death*

32.    On or about March 11, 2018, Mr. Penner went to the shower at approximately 8:20-8:35 PM. He never returned to his cell block.

33.    After Mr. Penner had been gone for 30 or more minutes, block cellmate Gene Brown reported Mr. Penner hanging from a towel in the shower. The towel had been tied to an ADA handlebar as a makeshift noose.

8 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

34.     Mr. Penner was alive but severely brain-damaged when he was finally cut down. Mr. Penner subsequently died in the early morning hours of March 12, 2018.

35.     Defendants knew Mr. Penner was a suicide risk and failed to take measures to monitor and protect him, including but not limited to providing adequate mental health services, failing to place him in a suicide-proof cell, and failing to conduct regular checks on him while he was in his cell. Defendants knowingly and consciously disregarded the known and substantial risk that Mr. Penner would harm himself while in their custody.

36.     Defendants knew Mr. Penner was at risk of severe injury or death at the hands of other inmates due to the rumors regarding his girlfriend's disappearance, and failed to take reasonable measures to monitor and protect him, including but not limited to providing him with a safe cell environment, conducting regular checks on him while he was in his cell and other general-population areas, and promptly following up on known threats against Mr. Penner's person. Defendants knowingly and consciously disregarded the known and substantial risk that Mr. Penner would be harmed by other inmates while in their custody.

37.     Defendants Whitcomb, Barkhurst, and the Deputies were all working on behalf of DCSO that night. On information and belief, said Defendants knew Mr. Penner was at risk of suicide and/or homicide and failed to take any measures to monitor and protect him.

<u>COUNT I</u>

<u>STATE LAW – WRONGFUL DEATH</u>

<u>BASED ON POLICY (PREVENTABLE SUICIDE)</u>

38.     Plaintiff realleages Paragraphs 1-37 and incorporates each by reference as if set forth fully herein.

39.     Count I is alleged against all Defendants, and Mr. Penner would have had a right to so allege had he survived his injuries.

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

40.     As custodians for Mr. Penner, Defendants had a special relationship and heightened duty to protect Mr. Penner from known risks of harm while within their custody.

41.     At all material times, DCSO had in place Jail Operations Policy CD-10-23 entitled "SUICIDE PREVENTION" (hereafter "Suicide Policy"). This policy was designed "*to have established procedures for identifying and responding to life-threatening situations and behaviors that could increase the risk for suicide*."

42.     The Suicide Policy put DCSO employees on notice that a person should be considered a suicide risk if one or more or more of the following conditions exists:

(1.) A history of suicide attempts *with or without current suicidal ideation*;

(2.) A noticeably depressed mood, *with or without current suicidal ideation*;

(3.) Real or perceived significant losses *"such as loss of spouse or loved one"*;

(4.) Is sentenced to what the inmate considers to be an intolerably long term; or

(5.) The inmate's job, community standing, religion, or other factor demonstrates an *unusually high degree of embarrassment or guilt due to the arrest or incarceration.*

43.     As referenced above, Defendants knew Mr. Penner exhibited multiple signs of suicide risk based on DCSO's own Suicide Policy. Notably, Defendants knew Mr. Penner had a history of suicide attempts, a noticeably depressed mood, real and significant loss of a loved one, and a high degree of embarrassment or guilt due to his arrest and incarceration.

44.     The Suicide Policy also required DCSO employees to conduct hourly monitoring of at-risk inmates, assure they had no objects in their possession that could be used to commit suicide including but not limited to *towels*, and refer for formal evaluation and/or hospitalization.

45.     Other than the one interview with Defendant Kitaji on February 25, 2018, Defendants made no effort to assess Mr. Penner's suicide risk or take any reasonable efforts to

10 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

assure any such risk was curtailed. Regarding the one interview conducted by Defendant Kitaji, Defendants ignored all signs of suicide risk and took Mr. Penner at his word that he did not exhibit any *current* suicidal ideations.

46.     Despite the other indications of past and current risk of suicide available to Defendants in the weeks leading up to Mr. Penner's death, Defendants made no other attempts to reduce or eliminate the risk Mr. Penner would commit suicide.

47.     Due to Defendants' failure to abide by the mandates of the Suicide Policy, Mr. Penner died on or about March 12, 2018.

48.     Mr. Penner's death was a direct and foreseeable consequence of Defendants' failure to abide by the mandates of the Suicide Policy.

49.     As a result of the Defendants' breach of duty to their inmate, Mr. Penner experienced economic harm, lost future earning capacity, loss of enjoyment and quality of life, pain, suffering, emotional distress, injury, and ultimately, death. These injuries caused the Estate damage in an amount to be determined in accordance with the law by a jury of his peers at trial.

## COUNT II

## STATE LAW – WRONGFUL DEATH

## BASED ON POLICY (PREVENTABLE HOMICIDE)

50.     Plaintiff realleges Paragraphs 1-49 and incorporates each by reference as if set forth fully herein.

51.     Count II is alleged against all Defendants, and Mr. Penner would have had a right to so allege had he survived his injuries.

52.     At all material times, DCSO had in place Jail Operations Policy CD-6-2 entitled "INMATE RIGHTS AND PRIVILEGES" (hereafter "the Inmate Rights Policy"). At all times, the Inmate Rights Policy defined that inmates such as Mr. Penner had a right to "[p]*rotection*

11 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

*from physical abuse, corporal punishment, personal injury, . . . and harassment*." The Inmate
Rights Policy, Section A, A-2(c).

53.     At all material times, the right captioned above entitled Mr. Penner to freedom
from physical abuse, corporal punishment, personal injury, and harassment from other inmates.

54.     As described above, Defendants, and each of them, knew Mr. Penner was
receiving death threats and threats of bodily injury from fellow inmates due to the disappearance
of his long-term girlfriend. Defendants recklessly disregarded the substantial and unjustifiable
risk that other inmates would seek to harm Mr. Penner.

55.     At all material times, Defendants made no efforts to investigate and/or quell such
threats and/or place Mr. Penner in a safer environment.

56.     Due to Defendants' failure to abide by the mandates of the Inmate Rights Policy,
Mr. Penner died on or about March 12, 2018.

57.     Mr. Penner's death was a direct and foreseeable consequence of Defendants'
failure to abide by the mandates of the Inmate Rights Policy.

58.     As a result of the Defendants' breach of duty to their inmate, Mr. Penner
experienced economic harm, lost future earning capacity, loss of enjoyment and quality of life,
pain, suffering, emotional distress, injury, and ultimately, death. These injuries caused the Estate
damage in an amount to be determined in accordance with the law by a jury of his peers at trial.

## COUNT III

## 42 U.S.C. § 1983 – FAILURE TO PROTECT IN VIOLATION OF THE
## FOURTEENTH AMENDMENT

59.     Plaintiff realleges Paragraphs 1-58 and incorporates each by reference as if set
forth fully herein.

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

60.     Count III is alleged against Defendants Barkhurst, Whitcomb, Kitaji, and the Deputies in their individual capacity (collectively hereafter "the Individual Defendants"), and Mr. Penner would have had a right to so allege had he survived his injuries.

61.     Under settled United States Supreme Court authority, and in accordance with the Fourteenth Amendment, Mr. Penner was entitled to be free from known substantial risks of harm while in DCSO custody.

62.     In violation of the Fourteenth Amendment, the individual Defendants knew and consciously disregarded a substantial risk of serious harm – that Mr. Penner would commit suicide while in DCSO custody.

63.     In the alternative, the individual Defendants knew and consciously disregarded a substantial risk of serious harm – that Mr. Penner would be murdered while in DCSO custody.

64.     The individual Defendants' above-described actions and omissions were undertaken with deliberate indifference to Mr. Penner's constitutional rights, based on the knowledge set forth above.

65.     As a result of the unjustified and unconstitutional conduct of the Individual Defendants, Mr. Penner experienced economic harm, lost future earning capacity, loss of enjoyment and quality of life, pain, suffering, emotional distress, injury, and ultimately, death. These injuries caused the Estate damage in an amount to be determined in accordance with the law by the jury at trial.

66.     The Individual Defendants' actions and omissions were the direct and proximate cause of the violations of Mr. Penner's constitutional rights, of Mr. Penner's death, and of the damages suffered by the Estate.

///

///

///

13 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

## COUNT IV

## 42 U.S.C. § 1983 - *MONELL* LIABILITY

## FAILURE TO TRAIN

67.     Plaintiff realleges Paragraphs 1-66 and incorporates each by reference as if set forth fully herein.

68.     Count IV is alleged against Defendants County and DCSO, (collectively hereafter "the Supervising Defendants") and Mr. Penner would have had a right to so allege had he survived his injuries.

69.     At all material times, the Supervising Defendants were aware of the substantial risk of suicide and homicide committed by jail inmates, evinced by the Suicide Policy and Inmates Right Policy heretofore described.

70.     During the relevant period, the Supervising Defendants were aware that DCSO employees and/or agents were undertrained in terms of understanding how to assure a safe environment for prisoners, and failed to make reasonable efforts to assure that DCSO employees were properly trained on how to identify and secure against risks of suicide and homicide. Relevant failures include, subject to amendment to conform to discovery:

   a) Assuring and training DCSO employees to successfully recognize red flags for suicidal and/or homicidal violence;

   b) Assuring and training DCSO employees to actually follow up on recognized red flags for suicidal and/or homicidal violence;

   c) Assuring that options are available to segregate and/or otherwise protect DCSO inmates at high risk for falling victim to suicidal and/or homicidal violence;

   d) Assuring and training DCSO employees how to effectively segregate and protect inmates at high risk for falling victim to suicidal and/or homicidal violence; and

14 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

e)   Assuring and training DCSO employees to actually effectively segregate and
protect inmates at high risk for falling victim to suicidal and/or homicidal
violence.

71.    These failures to train led to a widespread practice of deliberately ignoring
substantial risks of suicidal and homicidal violence perpetrated against inmates, including Mr.
Penner's own red flags and substantial risk of falling victim to suicidal and/or homicidal violence
as described above.

72.    Mr. Penner's injuries, and ultimately his death, were caused in substantial part by
these widespread omissions in policy training, practices, and procedures promulgated by the
County, DCSO, and DCSO Supervisors including but not limited to Defendant Whitcomb.

73.    Due to the Supervising Defendants' failure to train their employees on how to
properly respond to and mitigate such risks, Mr. Penner experienced economic harm, lost future
earning capacity, loss of enjoyment and quality of life, pain, suffering, emotional distress, injury,
and ultimately, death. These injuries caused the Estate damage in an amount to be determined in
accordance with the law by a jury at trial.

## COUNT V

## 42 U.S.C. § 1983 – PLAINTIFF'S DEPRIVATION OF LIBERTY IN VIOLATION OF THE FOURTEENTH AMENDMENT

74.    Plaintiff realleges Paragraphs 1-73 and incorporates each by reference as if set
forth fully herein.

75.    Count V is alleged against all Defendants, pursuant to Count III as to the
Individual Defendants and Count IV as to the Supervisory Defendants respectively.

76.    At all material times, Plaintiff had a substantive liberty interest in the
companionship and society of her child, Mr. Penner.

15 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

77.     At all material times, as set forth factually above, the Defendants, and each of them, had many opportunities spanning the course of several weeks to act on the substantial risk that Mr. Penner would fall victim to suicidal and/or homicidal violence, but failed to take any such action.

78.     Defendants' respective failures to act shock the conscience,

79.     Defendants respective failures to act constituted deliberate indifference.

80.     Due to the Defendants' knowing and deliberate failure to act on these risks, Plaintiff was deprived of her liberty interest in the companionship and society of her child, to her damage in an amount to be determined in accordance with the law by a jury of her peers.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

16 – Second Amended Complaint

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, in her individual capacity and as administrator of the Estate of Bryan Penner, prays that this Court enter judgment in her favor against Defendants, awarding compensatory damages, costs and attorneys' fees, against each of the Defendants in their individual capacities, and for such further additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

**DATED**: **February 25, 2020.**                    Respectfully Submitted,


                                                     **Rizk Law, P.C.**


                                                     s/ Alexander W. Pletch
                                                     Alexander W. Pletch, OSB 174834
                                                     Richard H. Rizk, OSB 901105
                                                     0434 SW Iowa Street
                                                     Portland, OR 97239
                                                     Ph: (503) 245-5677
                                                     F:   (503) 427-1919
                                                     alex@rizklaw.com

                                                     Attorneys for Plaintiff

Rizk Law, P.C.
0434 SW Iowa Street
Portland, OR 97239
Ph: (503) 245-5677
F: (503) 427-1919
alex@rizklaw.com